**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| ROSS RAGSDALE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 3:18-CV-117-MAB |
| | ) |
| SHAY ALLEN and | ) |
| TARRAH DELLINGER, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on the motion for summary judgment filed by

Defendants Shay Allen and Tarrah Dellinger (Doc. 108). For the reasons outlined below,

the motion is granted.

### BACKGROUND

Plaintiff Ross Ragsdale filed this *pro se* civil rights case pursuant to 42 U.S.C. § 1983

alleging his constitutional rights were violated at Lawrence Correctional Center. More

specifically, Plaintiff alleged that correctional officers failed to protect him from another

inmate who had threatened him, and after he was attacked by that inmate, the prison

doctor failed to adequately treat him (Doc. 10). The only claim remaining in this case is

Plaintiff's Eighth Amendment failure to protect claim against Defendants Shay Allen and

Tarrah Dellinger (*see* Doc. 75).

Defendants Allen and Dellinger filed a motion for summary judgment on the

merits of Plaintiff's claim on August 10, 2020 (Doc. 108). Plaintiff filed a response in opposition on October 27, 2020 (Doc. 113). Defendants did not file a reply brief.

### FACTS

Plaintiff Ross Ragsdale has been incarcerated in the Illinois Department of Corrections since March 2011 (Doc. 109-1, p. 9). He was transferred to Lawrence Correctional Center that same year (*Id.*). Plaintiff testified that he worked as a porter in his cell house at Lawrence, which entailed cleaning the dayroom and showers and doing other inmates' laundry (*Id.* at pp. 12–13). He would also do favors for other inmates while he was working, by getting them food and doing other tasks (*Id.* at p. 14). An inmate named Ray-Ray requested too many favors from Plaintiff, which began to interfere with Plaintiff's duties as a porter, and on May 24, 2016, Plaintiff told Ray-Ray that he would not do anymore favors for him (*Id.* at pp. 12, 15). Ray-Ray called Plaintiff a "bitch," and told Plaintiff to get out of his face (*Id.* at pp. 15–16). Plaintiff testified that he walked away from Ray-Ray (*Id.* at p. 16). Approximately an hour later, Ray-Ray told Plaintiff, "I'm going to beat your bitch ass. I'll get you soon enough" (*Id.*).

Plaintiff said he took Ray-Ray's statement as a threat and told his wing officer on the 3:00 to 11:00 shift, Shay Allen, about it (Doc. 109-1, pp 16–17, 20–22, 24, 56–57). Officer Allen told Plaintiff "to give it a day or two, and it will die out" (*Id.* at pp. 20–21). She also told him that "if I were to do something right now, nothing going to be done because its 3:00 to 11:00 shift, and . . . you know as well as I do 3:00 to 11:00 shift's not going to do nothing. It's mainly day shift that does stuff like that. But I'll see what I can do." (*Id.*). According to Plaintiff, nothing happened (*Id.* at p. 24, 27, 60). And Plaintiff therefore

believes that Officer Shay did not take any action (*Id.* at p. 24, 25–28). He explained that Officer Shay had no authority to move him, so she would have to report the incident to her commanding officer, and then the commanding officer would speak to him to see what was going on and decide whether to have him moved (*Id.*). But none of Officer Shay's superiors ever came and spoke to Plaintiff (*Id.*).

Plaintiff then told an officer on the day shift, but no action was taken (Doc. 109-1, pp. 17, 61). A day or two later, Plaintiff talked to Officer Allen again (*Id.*). She said "That's still going on," and Plaintiff said, "yes." (*Id.* at p. 61). She then said "I don't know what to tell you. It's out of my hands." (*Id.*).

At some point, Plaintiff had a conversation with Officer Tarrah Dellinger. He asked Officer Dellinger what he needed to do to get moved because another inmate had threatened him (Doc. 109-1, pp. 64, 66–68). She told him to speak to his wing officer and added, "I don't know what to tell you. Just beat his ass because you're not going to get moved" (Doc. 109-1, p. 21; *see also id.* at pp. 64–65, 67, 90).

Plaintiff then spoke to Officer Allen a third time on June 3, 2016 (Doc. 109-1, pp. 63, 90). By that point, Ray-Ray had not done anything or said anything more to Plaintiff. Plaintiff had continued working as a porter after Ray-Ray's initial threat, but Plaintiff testified that he ignored Ray-Ray while he was working, and Ray-Ray ignored him (*Id.* at pp. 33–34). Plaintiff also testified, however, that he had not been going to chow in order to avoid any face-to-face, out-of-cell interactions with Ray-Ray (*Id.* at pp. 17, 33). Plaintiff asked Officer Allen what he was supposed to do, and he explained that he was hungry and asked her if she could bring him back a meal tray from the chow hall (*Id.* at p. 63).

Officer Allen told him to go to chow because there did not appear to be a legitimate threat (*Id.* at pp. 17, 63, 90).

So Plaintiff went to chow. He testified that when he finished eating, he went to the dish room window to return his tray (Doc. 109-1, pp. 36–37). As he stood at the window, Ray-Ray walked up beside Plaintiff and poured beans on Plaintiff (*Id.*). Plaintiff asked Ray-Ray why he did it, and Ray-Ray said because "I can, bitch. . . . You're a porter. You can wash them." or something to that effect (*Id.* at pp. 34, 35, 37, 38, 44–45). Plaintiff walked away from Ray-Ray (*Id.* at pp. 37, 38). Plaintiff took it as an act of gamesmanship—"a sign of disrespect in front of everybody" and "trying to make a scene to stir up attention with his gang members" (*Id.* at pp. 38–39, 44).

The inmates lined up and left the chow hall (Doc. 109-1, pp. 46–47, 49–51). Plaintiff was asked to step out of line to adjust his identification badge, and in order to return to his to initial place in the line, Plaintiff had to pass Ray-Ray (*Id.* at pp. 49–51). Ray-Ray made an unspecified disrespectful comment to Plaintiff as Plaintiff passed him And Plaintiff told Ray-Ray, "Go eat a dick" (or "go suck a dick") (*Id.* at pp. 18, 35, 48, 49–51, 95–96). Plaintiff got back in his spot in line and a few seconds later, Ray-Ray ran up and struck him (*Id.* at pp. 35–36, 49–51). Correctional officers ran up and restrained Plaintiff and Ray-Ray (*Id.*).

Plaintiff testified that his face was fractured in multiple places and he had to have reconstructive surgery (Doc. 109-1, pp. 31, 36, 54).

## DISCUSSION

Summary judgment is proper when the moving party "shows that there is no

genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Factual disputes are genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented, and they are material only if their resolution might change the suit's outcome under the governing law." *Maniscalco v. Simon*, 712 F.3d 1139, 1143 (7th Cir. 2013) (citation and internal quotation marks omitted). In deciding a motion for summary judgment, the court's role is not to determine the truth of the matter, and the court may not "choose between competing inferences or balance the relative weight of conflicting evidence." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hansen v. Fincantieri Marine Grp., LLC*, 763 F.3d 832, 836 (7th Cir. 2014) (citations omitted); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). Instead, "it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *Hansen,* 763 F.3d at 836.

"The Eighth Amendment's prohibition on 'cruel and unusual punishments' obligates prison officials to 'take reasonable measures to guarantee the safety of . . . inmates.'" *Sinn v. Lemmon*, 911 F.3d 412, 419 (7th Cir. 2018) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). In particular, prison officials are required "to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833. In order to establish an Eighth Amendment violation based on a failure to protect, an inmate must show that the prison official was deliberately indifferent to "an excessive risk" to their health or safety. *Sinn*, 911 F.3d at 419 (quoting *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015)). Like all deliberate indifference claims, there is both an objective and subjective

Page 5 of 8

component. *Gevas*, 798 F.3d at 480. First, the prisoner must show that the harm to which they were exposed was objectively serious. *Id*. Second, the prisoner must show that the prison official knew of and disregarded the excessive risk to the inmate's health or safety. *Balsewicz v. Pawlyk*, 963 F.3d 650, 654 (7th Cir. 2020). This requires "actual, and not merely constructive, knowledge" of the risk of harm, meaning the official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Gevas*, 798 F.3d at 480 (quoting *Farmer*, 511 U.S. at 837). In deciding whether the prison official was aware of the risk, "the circumstances as a whole must be considered." *LaBrec v. Walker*, 948 F.3d 836, 843 (7th Cir. 2020).

Defendants do not dispute that the threat of which Plaintiff complained—being beaten by another inmate—was objectively serious (*see* Doc. 109). Instead, they argue that they did not have "actual knowledge of the realized threat" (Doc. 109, pp. 6). They contend that Ray-Ray's threat to beat up Plaintiff was an empty threat or a threat that had gone stale. And Ray-Ray attacked Plaintiff only after Plaintiff created a new and different risk, of which Defendants had no knowledge, by making an incendiary comment to Ray-Ray.

The Court agrees Defendants are entitled to summary judgment. Ray-Ray made his initial threat to harm Plaintiff on May 24, 2016. Ray-Ray did not say anything more to Plaintiff over the ensuing nine days while Plaintiff worked as a porter. By June 3rd, Officer Allen apparently thought that the threat of a physical assault had subsided and Plaintiff decided to go to chow. However, at chow, it became clear that Ray-Ray's ill-will

Page 6 of 8

toward Plaintiff remained, and he had not dropped the matter. He made it a point to antagonize and intimidate Plaintiff, but he never physically harmed Plaintiff. In line after chow, Plaintiff walked by Ray-Ray and Ray-Ray once again said something antagonistic but made no attempt to touch or physically harm Plaintiff. Simply put, the evidence before the Court is that while the situation between Plaintiff and Ray-Ray was tense and hostile, it was *not* physical, and Ray-Ray was not going to make good on his threat to beat up Plaintiff during dinner that day.

Plaintiff could have returned to the cell house and filed an emergency grievance or alerted his wing officer (or another appropriate officer) that he believed the threat to his safety had not abated based on Ray-Ray's hostile comments and actions during chow. Instead, Plaintiff's impulses got the best of him and he told Ray-Ray to "eat a dick." Plaintiff, without a doubt, knew that he was pouring gas on the fire with his comment, and his comment would very likely push Ray-Ray over the edge. He was consciously bringing the threatened beating to fruition with his own actions. Plaintiff through own his words to Ray-Ray, took an affirmative step to escalate the feud with Ray-Ray to a whole new level. He was responding to Ray-Ray in kind and this comment certainly changed the dynamic. There is no evidence to suggest that Defendants knew or had any reason to know, that Plaintiff would affirmatively escalate the feud with Ray-Ray and act in manner that virtually guaranteed the beating that he claims Defendants should have protected him from. No reasonable juror could find Defendants liable under these circumstances.

<u>CONCLUSION</u>

The motion for summary judgment filed by Defendants Shay Allen and Tarrah Dellinger (Doc. 108) is **GRANTED.** Plaintiff's claims against Defendants Allen and Dellinger are **DISMISSED with prejudice** and judgment will be entered in Defendants' favor. There being no claims or Defendants remaining in this action, the Clerk of Court is **DIRECTED** to enter judgment and close this case on the Court's docket.

**IT IS SO ORDERED.**

**DATED: March 29, 2021**

                                        **s/ Mark A. Beatty**
                                        **MARK A. BEATTY**
                                        **United States Magistrate Judge**